Lawrence G. MARTEL, Petitioner,

v.

**DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, Respondent.**

Appeal No. 83–1154.

United States Court of Appeals, Federal Circuit.

May 18, 1984.

Michael A. Tabb, Boston, Mass., argued for petitioner, Grover Nix, Boston, Mass., was on the brief.

M. Susan Burnett, Washington, D.C., argued for respondent. With her on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, and Sandra P. Spooner, Washington, D.C.

Stephen C. Cooper and Steven Z. Cohen, Southfield, Mich., were on the brief for amicus curiae on behalf of petitioner.

Edward J. Hickey, Jr., Gen. Counsel, Public Employees Dept., AFL–CIO, Washington, D.C., was on the brief as amicus curiae in support of petitioner.

H. Craig Becker, Washington, D.C., was on the brief as amicus curiae in support of petitioner.

Mitchell Notis, Staff Counsel, American Federation of Government Employees, Washington, D.C., was on the brief as amicus curiae in support of petitioner.

Marci B. Seville, Burton F. Boltuch, of counsel, Jonathan H. Siegel, of counsel, Oakland, Cal., was on the brief as amicus curiae in support of petitioner.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, SMITH and NIES, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

Petitioner Lawrence G. Martel (Martel) appeals from a decision of the Merit Systems Protection Board (board), affirming the decision of the Department of Transportation's Federal Aviation Administration (agency) to remove Martel from his position as air traffic control specialist at the Boston Air Traffic Control Tower, Logan Airport Facility, Boston, Massachusetts. The board also dismissed, as not an appealable adverse action, Martel's claim that the agency unlawfully suspended him, and hence owed him back pay, for the removal period. We affirm.

## Background

General background concerning the facts and issues arising from the agency's removal of air controllers who participated in an illegal strike is set forth in *Schapansky v. Department of Transportation*, 735 F.2d 477 (Fed.Cir.1984), and *Adams v. Department of Transportation*, 735 F.2d 488 (Fed.Cir.1984), issued this day. Martel's case differs because he testified that he telephoned his facility approximately 1 week after he received notice of his proposed removal, to inquire if he could return to work, and was told "good luck." A record of a phone call appeared in the agency file, indicating that on August 18, 1981, Martel requested that he be allowed to return to duty and a J. Campbell responded that it was too late.[1] The agency

---

1. The agency contends that the record of this phone call was never properly admitted into the case record and hence may not be considered. This is incorrect. When Martel's counsel read aloud, before the presiding official, the list of documents including the phone call notation, agency counsel confirmed that this list con-

formed with his. Board proceedings are not governed strictly by the rules of evidence; rather, the standard for admissibility is relevance and materiality. 5 C.F.R. § 1201.62(a) (1983). Moreover, the statute provides that "any supporting material" maintained by the agency "shall" be furnished to the board upon its re-

removed Martel from his position as air controller effective September 1, 1981.

The board, in an initial decision by the presiding official,[2] sustained the agency's removal of Martel based on the charges of unauthorized absence and participation in an illegal strike. However, the presiding official found that the agency had improperly suspended Martel in violation of the procedures required under 5 U.S.C. § 7513(b) (1982),[3] for the period from Martel's phone call—which the presiding official determined was approximately August 10, 1981—until the date of Martel's removal, September 1, 1981. This entitled Martel to 23 days' back pay. The full board reversed the presiding official on the question of improper suspension, but affirmed on the removal action.[4] Martel now exercises his right to appeal to this court.

### Issues

Martel raises two issues which this court has resolved today adversely to his position, in *Schapansky, supra:* (1) that the board erred in holding that the agency established a prima facie case of strike participation; and (2) that the board erred in not mitigating the penalty of removal. This leaves three issues which we here address: (1) whether substantial evidence on the record supports the board's finding that the agency did not suspend Martel, such that there was no adverse appealable action and no back pay owed Martel; (2) whether the agency erroneously removed Martel because he did not have sufficient notification that his conduct could be considered strike participation; and (3) whether the board erred in rejecting Martel's intimidation defense.

quest. 5 U.S.C. § 7513(e) (1982). Support for inclusion of the phone call notation in the Martel record is therefore ample.

**2.** *Martel v. Federal Aviation Admin.,* MSPB Initial Decision No. BN075281F0558 (Dec. 2, 1982).

**3.** All section references are to title 5, U.S.C., except where otherwise indicated.

### Opinion

### 1. *Unlawful Suspension*

We are bound by our holding today in *Adams, supra,* that no constructive or unlawful suspension occurred, such that the agency owes back pay, where petitioning air controllers voluntarily failed to report to work as scheduled, were considered absent without leave, and were not paid for that unworked time. Most importantly, in *Adams* petitioners gave the agency no reason to believe that they wanted to return to work. By contrast, Martel did give the agency some such reason when he telephoned his facility. We must therefore examine more closely the meaning of the statutory term "suspension" before reviewing the board's decision that the agency did not suspend Martel during the notice period of his removal.

We note first, however, that Martel bore the burden of establishing that he was constructively suspended, such that there was an adverse appealable action over which the board had jurisdiction. *Adams, supra; Rose v. Department of Health & Human Services,* 721 F.2d 355, 357 (Fed. Cir.1983); 5 C.F.R. § 1201.56(a)(2) (1983). In turn, our standard of review of the board's decision—whether it is "unsupported by substantial evidence" on the record—concerning the alleged suspension is governed by section 7703(c), set forth in the first footnotes of both *Novotny v. Department of Transportation,* 735 F.2d 521 (Fed.Cir.1984), and *Dorrance v. Department of Transportation,* 735 F.2d 516 (Fed.Cir.1984), decided today. Our jurisdiction attaches to the alleged suspension by means of sections 7512(2), 7513(d), 7701(a), and 7703–(a)(1) and (b)(1), and 28 U.S.C. § 1295(a)(9).[5]

**4.** *Martel v. Department of Transp.,* MSPB Docket No. BN075281F0558 (Apr. 25, 1983), 1983 FMSR 7024.

**5.** These provisions provide that suspensions for more than 14 days are the only suspensions appealable to the board and to this court. We consider that the presiding official's finding that the agency suspended Martel for 23 days covers

■ The statute provides that suspension "means the *placing* of an employee, for *disciplinary* reasons, in a temporary status without duties and pay." Section 7501(2). (Emphasis supplied.) The legislative history of this provision of the Civil Service Reform Act of 1978 enlightens us by stating that a suspension is a "*disciplinary* action temporarily *denying* an employee his duties or pay." S. REP. NO. 969, 95th Cong., 2d Sess. 47, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 2723, 2769 (emphasis supplied). Both the statute and the legislative history embrace at least two concepts which must be considered in determining whether a suspension exists: (1) the agency must have *placed* the employee in the suspended status, without duties and pay, against his will (*i.e.,* the agency's action must be adverse); and (2) the agency must have so acted for *disciplinary* reasons.[6]

The determination whether the agency *placed* Martel in suspension status, against his will, is a factual matter. The record is devoid of any evidence that the agency did so from the moment Martel walked off the job at 7 a.m. on August 3, 1981, with another striker, 1 hour before his scheduled shift ended, until the day (August 10 or 18) when Martel telephoned the facility to ask if he could return. During this period Martel initially remained home, but he testified that after he received his notice of proposed removal on August 9, 1981, he joined the picket line, since:

All else was lost. There was no way of getting back to work so I had no other recourse but to go on with the—with

PATCO. People tried to get back to work but they were just not allowed to.

\*　　\*　　\*　　\*　　\*　　\*

\* \* \* I did want to go back to work, still want to go back to work \* \* \*.
Testimony of Lawrence Martel, June 28, 1982, at 472, 473, before board presiding official, excerpted in Martel appendix before this court at 564, 565.

■ Although Martel may have been torn at this time between his wish to return to work and his belief that such an attempted return would have been futile, his actions (walking off the job without leave, joining the picket line) are to this point indistinguishable from those of the controllers in *Adams, supra.* The factual issue is a closer one, however, for the period between Martel's undisputed phone call requesting his return to work and his effective date of removal. Martel contends that his phone call communicated unequivocally to the agency that he was ready, willing, and able to return to work.[7] The presiding official agreed.

The full board found otherwise:

We find that the evidence of record is insufficient to establish that appellant was ready, willing, and able to work after receiving his proposed removal notice. Regarding his phone call to the agency sometime around the 10th of August, appellant does not mention to whom he talked, whether that person was a supervisor or had any decision-making authority, or what specifically he said to that agency employee. Based on

---

this point (assuming phone call made approximately August 10).

**6.** The board used a tripartite test for interpreting the term "suspension": (1) the action must be involuntary; (2) the action must be disciplinary; and (3) the employee must, in fact, be ready, willing, and able to work during the period in question. *Martel,* note 4 *supra.* The board drew this test from an earlier board opinion concerning enforced sick leave. *Mosely v. Department of the Navy,* 4 MSPB 220, 221 (1980), 1980 FMSR 5173, *aff'd,* 229 Ct.Cl. 718 (1981). Our responsibility as reviewing court, where a matter of statutory interpretation is at issue, is to begin with the language of the statute

and to hew closely to it. *Lindahl v. OPM,* 718 F.2d 391, 394 (Fed.Cir.1983).

**7.** Martel and *amici* also contend that the board erred, as a matter of law, in requiring that Martel communicate his desire to return to work to an agency official with decision-making authority. To the extent that the board did impose such a test, this is error and not required by law. However, to whom Martel communicated his request to return to work, and how, is certainly relevant in determining whether, as a factual matter, Martel was ready, willing, and able to work.

the evidence of record, the Board cannot find that appellant unequivocally communicated to the agency his availability and his desire to return to duty. * * *

*Martel,* note 4 *supra.*

■ In the interest of thoroughness, we note precisely Martel's testimony regarding the phone call:

Q Did you try and go back after August 6, 1981?

A Yeah, I did. A week later I believe it was, shortly thereafter; I called up and they—the conversation was good good [sic] luck. That's all there was to it.

Testimony of Lawrence Martel, *supra,* at 420, excerpted in Martel appendix at 512.

We note also the agency's record of Martel's phone call, and his testimony that he did want to return to work, both mentioned *supra.* Thus, there is in the record some evidence that would support a finding favorable to Martel. However that is not the test; our role is to determine whether there was substantial evidence in the record to support the conclusion reached by the board.

Faced with this weak record, and applying the statutory requirement that Martel be *placed* in suspension status, against his will, we cannot find the board's conclusion to be unsupported by substantial evidence. We do not know the identity or position of the Mr. Campbell to whom Martel, according to the agency file, spoke. More importantly, Martel himself apparently could not remember much about the conversation. Something more would be required, on the record, for this court to reverse the board and find that Martel was placed in suspension status against his will—*i.e.,* that he was in fact ready, willing, and able to come to work.[8]

Regarding the second statutory requirement concerning a suspension—that it be for disciplinary reasons—we need not reach this point. Having affirmed the board on its factual finding that Martel was not *placed* in a nonpay, nonduty, status against his will, we affirm the board's conclusion that he was not constructively suspended.

### 2. *Insufficient Notification*

■ Martel's argument that the agency erroneously removed him because he had insufficient notice that his conduct could be considered strike participation, is disingenuous. To begin with, in June 1981, the assistant chief at the Boston Tower facility counseled Martel about the serious consequences, including a fine or imprisonment, which could result from striking. Martel contends that the counseling took place in a large noisy room and that he had little idea what was being read. One would think that a reasonably concerned individual would, assuming he was confused at this point, take it upon himself to inquire further of his colleagues or his supervisor about the purpose of the counseling session and what was read. It would have at least been obvious to such a person that the session was important, and that it pertained directly to his livelihood.

In addition, the agency sent out two mass communications to all air controllers concerning the possible consequences of a strike. Martel contends that he received neither a letter from the agency administrator, warning of the consequences of striking, nor a telegram warning that strike participation could result in his removal. The board considered and rejected the evidence in this regard, and we do not disturb that finding. Petitioner's general contentions on this point, viewed in the context of the widespread, nationwide discussion of a possible strike at that time,

---

**8.** *See,* by contrast, *Campbell v. Department of Transp.,* MSPB Docket No. DE075281F0674 (Apr. 25, 1983), 1983 FMSR 7022. In that case the board found that appellant Root was unlawfully suspended from August 8, 1981, when he telephoned his facility asking to return, until his date of removal, September 2, 1981. The chief of the Denver Air Traffic Control Center testified that he received the call from Root on August 8 and advised Root that he could not return. Root was later observed on the picket line. *See also Anderson v. Department of Transp.,* 735 F.2d 537 (Fed.Cir.1984), issued today, in which one controller, Mr. Kolody, was found by the board to have been constructively suspended when he actually met with his facility chief to tell him that he (Kolody) wanted to return to work.

approach the level of a game of blindman's buff with the law. This we cannot sanction, and we affirm the board on this issue.

### 3. Intimidation Defense

Finally, Martel defends against the charge of strike participation by arguing that he was coerced into participating by fear of subsequent economic and psychological intimidation, as well as by fear of physical harm. In particular, he cites the union harassment technique of monitoring the work of nonparticipating controllers and reporting minor infractions (even inventing such infractions) until the controller loses his job or is suspended. When asked why he did not go to work, he testified:

> I was just scared that—I didn't know what was going to happen. I was scared that—well, I knew that I was going to be harrassed [sic], you know, it was foregone conclusion. I knew that I was going to be harrassed [sic] and I didn't know just to what extent and I also knew that if I did stay at work and when everybody came back is that my job was limited to a month, two months, before they had enough evidence and enough violations against everyone for some way—in some way, shape and form to do away with the job.

Testimony of Lawrence Martel, *supra* at 418, excerpted at 510.

We have held in *Johnson v. Department of Transportation*, 735 F.2d 510 No. 83–664, slip op. (Fed.Cir.1984), issued today, that the critical inquiry in determining whether an employee's action was coerced is whether that action was voluntary or involuntary, using the objective "reasonable person" test. In using this test, the court must look to the behavior of the normal, reasonable person as opposed to the subjective behavior of a partic-

ular individual in particularized circumstances. *Johnson, supra; Christie v. United States*, 518 F.2d 584, 587, 207 Ct.Cl. 333 (1975).

■ Martel contends that it is error to require that the type of coercion directed to the individual consist, in the case of an illegal strike, exclusively of a reasonable fear of *physical* danger to that person or others. We have not so limited our discussion of coercion in *Johnson* and do not do so here. To the extent that the board has so limited its definition, we hold that it erred.[9] However, as we have emphasized throughout our opinions issued today concerning the air controllers' nationwide strike, "[s]triking against the government is a grave offense * * * and a criminal offense * * * [which] disrupts the functioning of the government itself." *Schapansky, supra.* The goals of the strikers were "to inflict harm of the highest magnitude upon the national transportation system, to cause great public inconvenience, to injure the national economy, and to place at risk the public safety." *Id.* (citation omitted). Given this serious situation, objective evidence of the involuntary nature of an employee's strike participation, as a rebuttal to a prima facie charge thereof, where such evidence consists of threats of nonphysical harm, must be especially strong. Certainly, Martel's vague and speculative worries of future job harassment, leading to possible job suspension or removal, fall far short of the type of objective evidence which would suffice. A person of ordinary firmness would reasonably be expected to resist such fears, rather than join an illegal strike for which the law provides criminal penalties.

Martel's allegations of fear of physical danger to himself are even more vague, amounting to little more than threats that

---

9. Our reading of the board's *Johnson* decision does not support Martel's restricted view. In this court's *Johnson* opinion issued today, we pointed out that the board noted that "fear of 'financial ruin' or jeopardy to career advancement * * * *may* not suffice to render involuntary appellant's alleged participation in this case." (Emphasis supplied.) In our view the board thus holds open, correctly, the possibility

that an employee's participation in a strike *may* be rendered involuntary in certain exceptional circumstances involving threats of harm of a nonphysical nature. This is consistent with the board's rejection in its *Johnson* opinion of a criminal standard for the definition of duress, while hewing to a stricter standard than that allowed in normal civil cases, where participation in an illegal strike is not at issue.

**510**

he would be "sorry" if he didn't join the strike, and falling short of those claims alleged and rejected in *Johnson, supra*. In sum, applying the legal test outlined here and in *Johnson* concerning the duress defense, we find that substantial evidence exists on the record for the board's decision that Martel's intimidation defense fails. We therefore affirm.

AFFIRMED.