Thomas R. FERRANDO, John M. Erickson, and Michael J. Zullo, Petitioners,

v.

DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, Respondent.

Appeal Nos. 83–687 to 83–689.

United States Court of Appeals, Federal Circuit.

Aug. 20, 1985.

■■■■■■■■■■■■■■■■

Alan C. Wolin, Wolin & Wolin, of Hicksville, N.Y., argued for petitioners.

Sandra P. Spooner, Asst. Director, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Acting Assistant Attorney General, David M. Cohen, Director and Hillary A. Stern, Washington, D.C.

Diane R. Liff, Office of the General Counsel, Dept. of Transp., Washington, D.C., of counsel.

Before FRIEDMAN, Circuit Judge, MILLER, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

Petitioners Ferrando, Erickson, and Zullo, former air traffic controllers, appeal from decisions of the Merit Systems Protection Board (MSPB or board) in Case Nos. NY075281F0536, NY075281F0534, and NY075281F0842, respectively, sustaining their removal by the Department of Transportation, FAA, for striking against the United States government and absence without leave. We affirm.

## Background

The general facts concerning the 1981 nationwide strike called by the Professional Air Traffic Controllers Organization (PATCO) are set forth in *Schapansky v. Department of Transportation, FAA,* 735 F.2d 477 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). According to the parties' stipulation, each petitioner was an air traffic controller who was scheduled for work at the FAA's New York Air Route Control Center, Ronkonkoma, New York, during the period of the PATCO strike; each was a member of PATCO; and each failed to report for work during the strike. Unrebutted evidence in the record shows that each petitioner had been briefed by the agency on the illegality of striking against the government and had signed a document acknowledging receipt of a copy of the applicable law; that none of petitioners called into work during the strike to explain their absences; that none of petitioners chose to make an oral reply to their proposed removal; and that all submitted "stock" written responses to the proposed agency action on PATCO stationery, requesting time enlargements and production of documents. *See Adams v. Department of Transportation, FAA,* 735 F.2d 488, 490 (Fed.Cir.), *cert. denied sub nom. Schapansky v. Department of Transportation,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).

Upon being removed based on charges of striking and absence without leave, petitioners timely appealed to the MSPB. At the hearing before the presiding official, the government established a *prima facie* case of strike participation by the stipulated facts. *See Schapansky,* 735 F.2d at 482. Each petitioner attempted to rebut the *prima facie* case with evidence that his failure to report for work during the strike was due to coercion.

## Ferrando

Ferrando called three witnesses: a fellow controller who had also been discharged for striking; a neighbor; and his wife. The fellow controller testified that petitioner Ferrando had spoken out against the strike; that the union had resented Ferrando for this reason; and that he had heard PATCO officers say to Ferrando they might damage Ferrando's house if Ferrando did not cooperate. Ferrando's wife testified that she had received anonymous phone calls about every other week beginning in 1980 in which someone would say "strike" or "scab" or "How do you feel sleeping with a scab." She placed the timing of the calls between November 1980 and February 1981. Both the fellow controller and Ferrando's neighbor vouched that Mr. and Mrs. Ferrando had told them they were receiving such calls; the neighbor testified that he was present one time when Mrs. Ferrando received what she de-

scribed as an anonymous and harassing call.

Ferrando testified that he had been originally subjected to union pressure in 1970 when he refused to participate in a sickout. After that, he feared that his career would come to a halt if he didn't participate in the union. Although he acknowledged that in the summer of 1980 he had served on a PATCO committee, he explained that he had disagreed with union policy and left this position after a few months, whereupon he again was subjected to harassment from the union, including the anonymous phone calls. Ferrando recounted that, in March 1981, he overheard a fellow controller threaten that "he would shoot people if he saw them going into work" during a strike, or "break [their] legs."

Ferrando also testified that he had unsuccessfully sought to be transferred to another FAA facility to escape the harassment and, to make himself mobile, had sold his house in May. He claimed that, during the strike, he "drove down to the center on my way home from work,"[1] but encountered a "mob scene" of people shouting and screaming which frightened him and he drove home without stopping. He testified that he then made arrangements for his wife and child to stay with friend in New Jersey and, after again observing the "mob scene" at the facility, left for his hunting cabin in upstate New York. Ferrando refused to answer an interrogatory asking whether he physically appeared at his place of employment for purposes of reporting for duty at any time subsequent to 7:00 a.m. on August 3, 1981.

### Erickson

Erickson testified that he had not participated in previous PATCO job actions in 1969, 1970, and 1976, and that, as a result, he had been ostracized by his fellow controllers. Erickson recounted that on one occasion just prior to the strike he sat down at a table with some controllers and, as the conversation turned toward the

strike, one controller looked at him and said, "Maybe we should do what the teamsters do. Break legs this time." Erickson claimed that he was frightened by this and other similar remarks. Erickson called as a witness a former colleague who confirmed that Erickson had expressed to him, on a number of occasions, his opposition to the prospect of striking.

### Zullo

Two of the witnesses Zullo called, one a retired supervisor of controllers and the other a former controller, testified that Zullo had told them how he had been ostracized by the union, that his fellow controllers would no longer "swap" shifts with him, and that he believed they were sabotaging his ability to properly direct air traffic. Another witness, a controller who was not removed by the agency, testified that, in his presence, union officers suggested to Zullo that he might be "set up" (to improperly direct traffic) if he failed to go along with the union; and that on August 4, the second day of the strike, he was visiting Zullo and heard an anonymous telephone caller threaten to burn Zullo's house. A further witness, who was Zullo's neighbor, testified that on the evening of August 5, while Zullo was away, he discovered that the tires on Zullo's auto had been flattened, the word "STRIKE" painted on the auto, and "PATCO" painted on the garage.

Zullo testified that, in the weeks preceding the strike, he and his expectant wife received a number of anonymous calls saying "strike"; that these calls upset his wife and made him fear for her health; and that an anonymous note was put in his locker reading: "I hear your wife is still pregnant."

### The Presiding Official's Decision

The presiding official, noting that petitioners had been charged with striking against the government, a federal crime, applied a criminal standard for coercion,

---

**1.** Ferrando did not work at the FAA center during the strike (he was AWOL from August 3–6, 1981). His testimony implies that he had another job.

specifically, whether the pressure in each case had been such as to engender "a well-grounded apprehension of immediate serious bodily injury." Under this standard, the presiding official held that none of petitioners had established coercion. No review by the full board was sought.

## Analysis

### I.

■ In *Johnson v. Department of Transportation, FAA,* 735 F.2d 510, 513–15 (Fed.Cir.1984), this court affirmed the board's rejection of a test of coercion applicable to criminal cases, i.e., a threat of imminent death or physical bodily harm to the actor which he could not avoid. Thus, the comparable standard of criminal coercion applied to petitioners here by the presiding official cannot be upheld in these appeals. However, the agency's decision may be upheld on appeal if the appropriate standard, applied to the undisputed facts and inferences drawn in petitioners' favor, leads to no different result. *See Martel v. Department of Transportation, FAA,* 735 F.2d 504, 509–10 (Fed.Cir.1984). In this case, the government does not challenge the facts but maintains that coercion is not established in any of these appeals under the appropriate standard. Conversely, petitioners ask us to hold that the record shows coercion. Under these circumstances, we will address the merits.

### II.

■ Under the standard set forth in *Johnson,* 735 F.2d at 515, coercion will be found if a controller's failure to report for work was the result of a threat or other intimidating conduct directed toward him which is sufficient to instill in him a "reasonable fear of physical danger to himself or others which a person of ordinary firmness would not be expected to resist."

In *Martel,* 735 F.2d at 509–10, this court held that the *Johnson* standard left open the possibility that, *in exceptional circumstances,* coercion might be based on something other than the fear of physical assault. However, the court further held that, given the serious nature of the offense of striking, evidence of threats of non-physical harm must be *especially strong.* "Vague and speculative worries of future job harassment leading to possible job suspension or removal fall far short of the type of objective evidence which would suffice." *Id.* at 509.

Thus, coercion was not established in the *Martel* case by Martel's testimony that he feared the union harassment technique of monitoring the work of non-participating controllers and reporting, and even inventing, infractions until the controller lost his job or was suspended. Such fears relate to the future and are speculative, being dependent on the return of the strikers to their old jobs.

The subject appeals do not meet the *Johnson* standard; nor can they be distinguished from *Martel.*

■ Evidence of threatening conduct directed at Ferrando or his wife consists primarily of anonymous phone calls, many long prior to the August 1981 strike. These calls, in which someone would say "strike" or "scab" were no more than typical name-calling by a striker against a non-striker. A person of ordinary firmness would be expected to resist verbal attacks of this nature. Similarly, others returned to work despite the "mob scene" at the FAA facility. Ferrando offered no evidence that he actually sought to enter or even attempted to *call* the facility to explain that he was afraid to return to work. Nor did he seek protection, such as an escort through the picket line. The one specific threat by PATCO officials that they "might damage" his house is not the *strong evidence* required under *Martel* to establish coercion not based on fear of physical assault. Rather, the statement is in the nature of a generalized threat against non-strikers, particularly as other controllers were present.[2]

---

2. We have considered Ferrando's claim of procedural error by the agency in allegedly afford-

ing him less than seven days within which to respond to the agency's charges; however, we

■ Erickson's general fear of being ostracized and refused cooperation by fellow controllers is comparable to the testimony in *Martel* and insufficient to establish an exceptional case. The remark by a fellow controller that he would "break legs" is again the type of blustering which one of ordinary firmness would be expected to resist.

■ Zullo also fails to establish coercion under the *Johnson/Martel* standard. For one thing, the case of striking against Zullo is stronger than a minimal *prima facie* case and, thus, more difficult to overcome. Zullo admittedly attended union sponsored rallies in support of the strike and actively engaged in picketing at the entrance to the facility. With respect to the "vandalism" that occurred on the evening of August 5, which appears at first blush to support his defense rather strongly, Zullo's testimony reveals that he had failed to report for his deadline shift *before* he was aware of the incident. Thus, the vandalism could not have been the reason he did not report for work at that time. Finally, like Ferrando and Erickson, Zullo never called the facility to explain his apprehension of returning to work.

### III.

#### Conclusion

In each case, the record does not contain evidence of threats or intimidating conduct of physical violence which a reasonable person would not have been expected to resist, as required under the *Johnson* standard. Further, petitioners' evidence of career threats is speculative to the same degree as in *Martel*. Neither such threats nor the threats to property here establish an "exceptional case." Accordingly, petitioners have failed to establish a defense of coercion. The removal actions must be upheld.

AFFIRMED.

agree with the presiding official that, even if the response time was erroneously shortened, there is no evidence that the error was harmful. *See Adams,* 735 F.2d at 490 n. 3. We also reject the assertion that the presiding official abused his discretion in excluding Ferrando's testimony as to the names of the individuals who allegedly coerced him in view of Ferrando's refusal to reveal such names during discovery.