In view of the foregoing, we affirm the decision of the board.[12]

AFFIRMED.

Ervin SCHULTZ, Petitioner,

v.

DEPARTMENT OF TRANSPORTATION, FAA, Respondent.

Appeal No. 85–979.

United States Court of Appeals, Federal Circuit.

Sept. 16, 1985.

---

Carl H. DeBroux, N. Aurora, Ill., argued for petitioner.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner, Washington, D.C.

Before FRIEDMAN, Circuit Judge, MILLER, Senior Circuit Judge, and NIES, Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board (Board) in a consolidated proceeding affirming the removal of the petitioner as an air traffic controller for participating in the 1981 illegal air traffic controllers' strike. We affirm.

**I**

The basic facts relating to the air traffic controllers' strike have been set forth in our opinion in *Schapansky v. Department of Transportation, FAA,* 735 F.2d 477 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984), and need not be repeated here.

The strike began on August 3, 1981. That morning the President, speaking over national television, stated that any striker who did not report for work by 11 a.m., on August 5, would be discharged. Controllers not due to report until after that time were treated as complying with the President's directive if they reported for work on their "deadline" shift, *i.e.,* the first shift after 11 a.m.

The petitioner did not report for work on his deadline shift. The agency then removed him for striking and absence without leave. The presiding official noted that the petitioner was one of the controllers who admitted that he had picketed during the first week of the strike before his deadline shift.

The presiding official held that under *Schapansky* the agency had established a *prima facie* case of strike participation and that the petitioner had not rebutted that case by his claim that his failure to report to work "was caused by the harassment of others." The presiding official ruled that the petitioner "relied on generalized threats and fear of working conditions should PATCO [the union] win as his basis for not returning to work" and that under the Board's decision that we affirmed in *Johnson v. Department of Transportation, FAA,* 735 F.2d 510 (Fed.Cir.), "such claims of duress do not rebut an agency's *prima facie* case." The presiding official noted that the petitioner's "claim that shortly after his deadline shift he would have returned to work would, if true, tend to cast some doubt on the seriousness with which he viewed the threats of harm to his person if he crossed the picket line."

The presiding official also rejected the other grounds upon which the petitioner and other controllers challenged their removal. The Board denied a petition for review.

**II**

A. The petitioner's principal argument is that his failure to report for work during the strike was the result not of his voluntary participation in the strike but of the coercion and harassment to which union members subjected him. The Board correctly rejected that contention.

In *Johnson,* we upheld the Board's "objective standard of coercion" and its application of that standard in concluding that Johnson had not rebutted the government's *prima facie* case by a sufficient showing of duress (735 F.2d at 515). We stated:

The employee must establish that his failure to work "was the result of a threat or other intimidating conduct" that gives him a "reasonable fear of physical danger to himself or others, which a person of ordinary firmness

would not be expected to resist." Applying this standard of the reaction of a person "of ordinary firmness," the Board concluded that although Johnson had been "subjected to personal and professional pressures," the evidence he submitted, showing only "moral exhortations, overheard statements and generalized threats," was "insufficient foundation[ ] for a finding of duress."

*Id.* at 514.

The evidence upon which the petitioner relies to support his claim of duress did not meet the *Johnson* standard because, as the presiding official correctly noted, the evidence showed merely "generalized threats and fear of working conditions should PATCO win...." The evidence was as follows:

1. Prior to the strike, the petitioner told a supervisory air traffic controller that he did not agree with the union's strike plans and did not intend to strike.

2. In June 1981, also prior to the strike, another controller advised the petitioner not to cross the picket line "or we'll get you." When asked what would happen to the petitioner if he crossed the picket line, the controller replied, "Just wait and see." These statements were made to the petitioner at a tavern where he was "having a beer or two" during an argument with several other controllers.

3. During the strike, before the petitioner's deadline shift, he personally observed a large number of striking controllers in front of the gate used by nonstriking controllers to enter and exit the facility. The nonstriking controllers were subjected to verbal harassment by the crowd.

4. On August 4, the day before the Presidential deadline for reporting to work, several union members made generalized threats at a union meeting about what would happen to controllers who crossed the picket line. One of them held a baseball bat when he made the threat.

5. Beginning August 6, 1981, after the petitioner's deadline shift, Federal marshals were used at the facility to ensure the safety of nonstriking controllers attempting to enter and exit.

6. Union members made threats to other controllers.

7. The petitioner received an anonymous telephone call asking whether his fire insurance was paid up.

8. The property of nonstriking controllers was vandalized.

This evidence falls far short of establishing that the petitioner failed to report for work because of "a threat or other intimidating conduct" that created a "reasonable fear of physical danger to himself or others, which a person of ordinary firmness would not be expected to resist." *Johnson,* 735 F.2d at 514. Rather, it amounted to no more than the "moral exhortations, overheard statements, and generalized threats" which, *Johnson* held, were an "insufficient foundation[ ] for a finding of duress." We have no reason to disagree with the Board's conclusion that a "reasonable person" (*Johnson*) faced with these pressures, who did not want to participate in the strike, would have gone to work—as a number of controllers did.

In his brief before this court, the petitioner also relies upon additional evidence of violent conditions at the picket line which allegedly made him afraid to cross it. That evidence, however, was not part of the record in this case but was introduced in other air traffic controller cases involving the same facility. It is not a part of the record upon which we review the Board's decision in this case.

The petitioner apparently also contends that he was coerced into striking because of concern that, if the union won the strike and the striking controllers returned to work, his air traffic controller career would be jeopardized by the adverse actions the returning controllers would take against him. He relies upon *Martel v. Department of Transportation, FAA,* 735 F.2d 504 (Fed.Cir.1984), where we stated that our discussion of coercion in *Johnson* was not intended to be limited to personal coercion (*id.* at 509), and that the Board in

*Johnson* "correctly" had held open "the possibility that an employee's participation in a strike *may* be rendered involuntary in certain exceptional circumstances involving threats of harm of a nonphysical nature." *Id.* at 509, n. 9 (emphasis in original).

These statements in *Martel* have been cited in a number of cases before us as supporting rather broad exceptions to the *Johnson* requirement that to establish coercion direct threats of personal injury must be shown. To eliminate an apparent misunderstanding, we stress that those statements in *Martel* were intended only to recognize that there might be an exceptional situation in which threats of nonphysical violence would suffice to show coercion. They were not intended to create the broad exceptions to the strict standard of coercion enunciated in *Johnson* that some parties apparently assumed them to have done. Indeed, after making those statements in *Martel,* we further noted that in view of the "serious situation" the air traffic controllers' strike had created,

> objective evidence of the involuntary nature of an employee's strike participation, as a rebuttal to a prima facie charge thereof, where such evidence consists of threats of nonphysical harm, must be especially strong. Certainly, Martel's vague and speculative worries of future job harassment, leading to possible job suspension or removal, fall far short of the type of objective evidence which would suffice. A person of ordinary firmness would reasonably be expected to resist such fears, rather than join an illegal strike for which the law provides criminal penalties.

735 F.2d at 509.

In *Ferrando v. Department of Transportation, FAA,* 771 F.2d 489, 492 (Fed. Cir.1985), we recently reiterated this narrow meaning of *Martel.* We also pointed out that

> coercion was not established in the *Martel* case by Martel's testimony that he feared the union harassment technique of monitoring the work of non-participating controllers and reporting, and even

inventing, infractions until the controller lost his job or was suspended. Such fears relate to the future and are speculative, being dependent on the return of the strikers to their old jobs.

B. The other grounds upon which the petitioner challenges the Board's decision sustaining his removal need little discussion.

■ 1. The petitioner contends that the Board's ruling that he had participated in the strike was defective because the Board ignored the intent element of striking. *Schapansky* specifically rejected that argument, on the ground that "an intent to strike can be proved by circumstantial evidence" and that "[t]he unrebutted prima facie case here constitutes such circumstantial evidence." 735 F.2d at 483. *See also Russell v. Department of Transportation, FAA,* 771 F.2d 493 (Fed.Cir.1985). The government presented the same unrebutted *prima facie* case against the petitioner.

2. Although the petitioner asserts that the individual the agency designated to hear his oral reply to the notice of proposed removal was not authorized to make or recommend a final decision, as 5 C.F.R. § 752.404(c)(2) (1981) required, there is nothing in this record that shows either the identity of that individual or the scope of his authority. Moreover, the petitioner had not established that even if the authority of the reply officer had been erroneously restricted, the error was harmful.

■ 3. Finally, the petitioner contends that the Board erred in denying his petition for review, in which he sought to present additional evidence. This evidence related to the coercion that allegedly prevented the petitioner from crossing the picket line. The petitioner gave no convincing reason why he had not presented that evidence at the hearing before the presiding official. The Board did not err in holding that this additional evidence did not warrant granting review.

## CONCLUSION

The order of the Merit Systems Protection Board affirming the removal of the petitioner is affirmed.

AFFIRMED.