**Michael CRIVELLI, et al., Petitioners,**

v.

**DEPARTMENT OF TRANSPORTA-
TION, FEDERAL AVIATION
ADMINISTRATION, Respondent.**

**Appeal No. 85–1773.**

United States Court of Appeals,
Federal Circuit.

Decided June 18, 1986.

Douglas J. Behr, Mayberry & Leighton, Washington, D.C., for petitioners. Richard J. Leighton, Risa D. Sandler and Margaret S. Dailey, Buchanan Ingersoll, Professional Corp., Washington, D.C., were on brief for petitioners.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen Director and Sandra P. Spooner, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on brief for respondent.

Before RICH and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

COWEN, Senior Circuit Judge.

The petitioners, Michael Crivelli and Stuart Morse, formerly employed at the air traffic control facility in Ronkonkoma, New York, appeal from a decision of the Merit Systems Protection Board (Board), affirming their removal for participation in the 1981 illegal air traffic controllers' strike. We affirm the decision of the Board in the case of Michael Crivelli, but we vacate and remand the decision in the case of Stuart Morse.

The basic facts relating to the strike are set forth in *Schapansky v. Department of Transportation, FAA,* 735 F.2d 477 (Fed. Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984), and need not be repeated here.

### I. *Michael Crivelli*

■ Michael Crivelli was on uncancelled annual leave until August 19, 1981. On August 16, he learned that his father had died suddenly and unexpectedly. The following day, he went to the facility, crossed the picket line, and spoke to the Acting Deputy Chief, who extended petitioner's leave until the shift beginning at 7 a.m. on August 24, 1981. On August 24, he left his house intending to go to work, but rode around in his car for approximately 2 hours, and then went home. He testified he was upset and confused because his father had passed away so suddenly. He telephoned the facility about 9 a.m. the same day in an effort to get his leave extended for another day. He explained the circumstances to the Acting Deputy Chief, who informed petitioner that since he had failed to report for his 7 a.m. shift he would be fired. He did not picket in support of the strike until after he was told that he had been fired.

In his case, the presiding official found: With regard to Mr. Crivelli, he in fact, offered no coherent or reasonable explanation of his failure to appear for work. Such failure to work aided PATCO's

cause and, when considered in conjunction with his picketing, makes it more likely than not that his absence was part of the ongoing concerted withholding of services.

The full Board affirmed this decision summarily, noting that when petitioner phoned the facility on August 24, he had not asked to return to work.

We have encountered some difficulty in deciding this case, both because of the paucity of Crivelli's testimony regarding his capacity to work and the brevity of the findings of the presiding official on that issue. Since he knew that the strike was in progress, petitioner's failure to report for work at his 7 a.m. shift after the expiration of his leave, was sufficient to establish a prima facie case of strike participation. The burden then devolved on petitioner to establish by objective evidence that he was incapable of performing any duties. *Triolo v. Department of Transportation, FAA,* 769 F.2d 760, 762 (Fed.Cir.1985); *Anderson v. Department of Transportation, FAA,* 735 F.2d 537 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). Although he was upset over the death of his father, petitioner failed to establish that he was unable to return to work, and at least, to perform some non-control duties, for which there was a great need at that time. In spite of the terseness of the presiding official's decision, we regard it as essentially a finding of fact that petitioner had failed to discharge his burden of proving his incapacity to return to his station and to perform some work there. After a careful study of the record we cannot say that the Board's decision, which sustained the determination of the presiding official, was arbitrary, capricious, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1982); *see Hayes v. Dept. of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir. 1984).

### II. *Stuart Morse*

■ The agency removed petitioner for being on strike and AWOL on August 3 and 6, 1981. He was scheduled for regular days off on August 4 and 5, and these were

not cancelled. He contends that he was on approved sick leave on August 3 and 6, the only days at issue in this case.

The following paragraph is a summary of the petitioner's uncontradicted testimony at the hearing before the Merit Systems Protection Board:

Petitioner had a history of stomach ulcers, for which his doctor prescribed the drug Librex. The FAA flight surgeon informed him that when he was taking Librex, he was disqualified from working as an air traffic controller and that he could ask for temporary non-control duties or take sick leave while using the drug. At his facility, the management did not require controllers taking disqualifying medication to perform non-control duties. On some occasions, petitioner had voluntarily performed non-control duties, but he usually took sick leave while using Librex. Under the prevailing procedures, he would call the facility, state that he would not be at work because he was taking Librex, and estimate the time he expected to be on sick leave. There was no requirement that he call the facility daily while on sick leave, nor was he obligated to submit a doctor's certificate to obtain approval of sick leave to justify absences of 4 days or less.

When petitioner's ulcer flared up on August 2, 1981, he began taking Librex on the advice of his doctor. He telephoned his team supervisor on that day, stated that he was on Librex, and requested a few days of sick leave. The team supervisor indicated his approval. Petitioner's testimony regarding this telephone conversation was not contradicted by any significant evidence. The only evidence to the contrary was the testimony of Mr. Stolfi, his team supervisor, who denied receiving any request from petitioner for sick leave for either August 1, 2, or 3. The time and attendance records, however, confirmed petitioner's testimony; they showed that he was on sick leave on August 2. The presiding official concluded that petitioner must have telephoned the facility on August 2, because the records indicated that he was granted sick leave for that day. The transcript of the testimony reflects that the memory of the team supervisor was faulty; he testified that he was not on duty on August 2, despite the fact that the time and attendance records showed that he and his crew worked from 8 a.m. to 4 p.m. on that day.

Although there was no credible evidence contrary to the testimony of petitioner, the presiding official held:

With regard to Mr. Morse, I conclude, notwithstanding the testimony of Mr. Stolfi, that appellant must have telephoned the facility since his official records indicate he was granted sick leave on Sunday. Nevertheless, I find it extremely unreasonable, and therefore do not credit, his argument that he believed his one phone call entitled him to indefinite continuous sick leave without further authorization or substantiation. This is particularly so since he was not in fact incapacitated, but only disqualified for a particular set of duties, and that he had in the past been able to perform other functions while in a similar condition. Had he been acting in good faith, he would, I feel, have made some further contact with his superiors, particularly since it was self-evident that his services—in any capacity—would be sorely needed during a period of mass absences. Instead of doing this, he chose in essence to throw his lot in with PATCO by staying away from his duties. Finally, I find appellant's present defense to be substantially vitiated by the fact that it was not raised within the agency when appellant had the opportunity to reply to the charges against him. *Risner v. FAA,* [7 M.S.P.B. 342, 7 M.S.P.R. 480] MSPB No. SL075209067 (1981). Thus, a preponderance of the evidence indicates appellant Morse participated in the strike as alleged.

The Board, with Member Devaney dissenting, summarily upheld petitioner's removal, with the statement that the presiding official had properly discredited petitioner's assertion that he was entitled to indefinite extended sick leave in light of the

obvious need for his services at the facility, his performance of non-control duties on previous occasions, and his failure to assert the defense of his incapacity in his reply to the charges. Both the presiding official and the Board erred in characterizing petitioner's request as one for "indefinite" extended sick leave. The record shows that his request was for "a few days" leave and that this was approved.

After a review of the record in this case, we agree with the following views of the dissenting Member Devaney:

> Appellant was scheduled for regular days off August 4 and 5, 1981, which were not canceled. The issue here is limited to whether appellant was entitled to sick leave on August 3 and 6. Appellant's actions were completely consistent with past practice at the facility. In my view, the agency has not produced adequate evidence to contradict the appellant's credible testimony concerning his illness. On this record, there can be no doubt that appellant was ordered by his physician to take a disqualifying drug and that he acted in a responsible and reasonable manner in requesting sick leave from his supervisor.[4]

---

[4] There was no requirement of written documentation prior to granting sick leave. Tr. 82–83. In addition, for absences of four work days or less, as here, there was no requirement that a medical certificate be submitted. PATCO–FAA Collective Bargaining Agreement, Art. 29, § 4 (Pet.Ex.FF).

Therefore, we conclude that the Board's finding that petitioner failed to rebut the Government's prima facie case of strike participation not only lacks substantial support in the evidence, but is in conflict with the clear preponderance of the evidence.

Consequently, we hold that the Board's decision in the case of petitioner Morse is arbitrary, capricious and not supported by substantial evidence. Accordingly, the decision is vacated and the case is remanded to the Board, with instructions that the agency shall restore petitioner Morse to his former position with back pay as provided by law.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.