**Joseph E. STUMPF and James R. Brickner, et al., Petitioners,**

v.

**DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, Respondent.**

**Appeal No. 85–1745.**
**MSPB Docket Nos. PH075281F1025, PH075281F1049, PH075281F1068, PH075281F1079 and PH075281F1080.**

United States Court of Appeals, Federal Circuit.

June 30, 1986.

Richard J. Leighton, Mayberry & Leighton, Washington, D.C., argued, for petitioners. With him on brief were Risa D. Sandler and Margaret S. Dailey, Washington, D.C.

Sandra P. Spooner, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director, Washington, D.C.

Before RICH and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

DAVIS, Circuit Judge.

Five former air controllers from the Pittsburgh facility, who were removed for participating in the August 1981 strike, appeal in this case from the decisions of the Merit Systems Protection Board (MSPB or Board), sustaining their removal. We affirm.[1]

Without again reviewing the circumstances of the strike or the general air controller arguments that have been rejected in *Schapansky v. Department of Transportation, FAA,* 735 F.2d 477 (Fed. Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984), and other "lead cases," we proceed immediately to consider the particular situations and contentions of the five individuals now before us. In each instance we believe that the presiding official's opinion dealt adequately with petitioner's arguments, but we discuss briefly

1. Oral argument has been heard in these cases.

the major individual points proffered to us in support of reversal.

## I.

### Brickner and Novitsky

These petitioners claim that they did not report for their deadline shifts (which came after August 5, 11 a.m.) because they had heard from other controllers that their supervisor (Kenneth Erb) had stated that many controllers had already been fired and that anyone who had not reported by 11 o'clock was or would be separated. Petitioners have said they believed that this statement meant that they too had already been removed. However, Brickner had been correctly informed by other controllers, shortly before he received this news, about the concept of a "deadline shift" (which could occur after August 5, 11 a.m.). Novitsky had received a telegram from the agency telling him to report for his next shift. The presiding officer held, in both instances, that the petitioners should have attempted to resolve—by communicating directly with Erb or another official person—the apparent conflict between the secondhand, hearsay information as to what Erb had said and the contrasting information as to the importance of meeting the deadlines they had already received. Neither Brickner nor Novitsky made any attempt to clarify his alleged confusion; they both simply stayed away.

■ We agree with the presiding official that, on these facts, the petitioners were properly removed. This court has already indicated that controllers not intending to strike (nor participating in it) would not cavalierly accept, without inquiry, the loss of their jobs because of their own mistaken view that they had to return precisely by 11 o'clock on August 5, 1981. *Adams v. Department of Transportation, FAA,* 735 F.2d 488, 491 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). *A fortiori,* controllers who received secondhand reports as to alleged statements by their supervisor—reports directly contradicting the controllers' previous information—would and should have made some inquiry.

Petitioners rely on the full Board's decision in *Benson v. Department of Transportation, FAA,* 19 MSPR 596 (1984), reversing the removal of certain other controllers from the same facility who relied on Erb's statements.[2] *Benson* was quite different. Those four controllers "proceeded to the home of supervisor Erb in order to get clarification concerning their confused work situation." *Id.* at 601. Erb told them directly, face to face, that they had already been fired as of 11 o'clock that morning and could not return to work. This was of course incorrect, but those controllers reasonably relied on that erroneous statement. In the very same decision, however, the Board refused (over a dissent) to cancel the removal of two other controllers who, like petitioners here, did not meet with Erb and "failed to inquire of any management official concerning their deadline shift" but instead relied on statements of others as to what Erb had said. *Id.* at 602. If the *Benson* decision has any bearing on the present case, it is solely this latter aspect of that ruling which sanctioned removal of controllers in the same situation as Brickner and Novitsky.

## II.

### Lane and Snyder

■ Lane and Snyder contend that they were on uncancelled annual leave at the time the agency thought they had to report to work. There was, however, an outstanding order of the Pittsburgh facility cancelling all outstanding leave at the time of the strike. Lane admitted he was aware of that order but thought it was countermanded by a telegram from the agency which told him to report for work on his next scheduled shift (his previously scheduled shift was after his annual leave was to

---

**2.** Of course, a Board decision is not precedent in this court, but we consider it because petitioners argue disparate treatment.

end). The presiding official disbelieved this explanation as "disingenuous" and correctly held that, in any event, Lane should have made inquiry in the light of the allegedly confusing signals. *See* Part I, *supra.*

Snyder signed the Pittsburgh order cancelling leave but says he had not read it. Like Lane, he too had received a telegram calling him back to work during the strike. The presiding official properly held that Snyder's testimony that he did not think he had to return during his previously authorized leave was entitled to no credence and that Lane was to be held accountable for knowing about the cancellation order bearing his own signature.[3]

### III.

#### Stumpf

Petitioner Stumpf's argument is that he was either on approved annual leave or had regular days off for the entire period from August 3 through August 10, 1981—and that he was never notified that his leave was cancelled. The presiding official found that (a) Stumpf was not on approved annual leave for as much time as he claimed; (b) he was aware that, in the event of a strike, his leave would be cancelled; and (c) he must have been aware of the existence of the strike. These findings are supported by substantial evidence and stemmed from unassailable determinations of credibility. *E.g., Griessenauer v. Department of Energy,* 754 F.2d 361 (Fed.Cir.1985). Furthermore, petitioner admitted that he had earlier been ordered to report for work or to call the facility for an assignment in the event of a strike. He never did so but continued to stay away.

AFFIRMED.

---

**3.** These petitioners cite another portion of the Board's *Benson* decision (discussed in Part I, *supra*) which upheld the presiding official's reversal of the removal of two other controllers. There, unlike this case, the presiding official believed—on the facts of those cases—those controllers' testimony that they did not think the order cancelling leave applied to them.