Bruce L. DYSTHE, et al., Petitioners,

v.

DEPARTMENT OF TRANSPORTA-
TION, FEDERAL AVIATION
ADMINISTRATION, Respondent.

Appeal No. 85–1579.

United States Court of Appeals,
Federal Circuit.

June 30, 1986.

Douglas J. Behr, Mayberry & Leighton, Washington, D.C., argued, for petitioners. Richard J. Leighton, Risa D. Sandler and Margaret S. Dailey, Mayberry & Leighton, Washington, D.C., were on brief, for petitioners.

Sandra P. Spooner, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on brief, were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director.

Before RICH and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

DAVIS, Circuit Judge.

These appeals are by a number of former air controllers employed at South Dakota or North Dakota facilities, who were removed for participating in the August 1981 strike and for being absent without leave at that time. Their separation was affirmed by the presiding official of the Merit

Systems Protection Board (MSPB or Board) and the full Board denied review. After oral argument, we affirm the MSPB decisions. Because of the multitude of our rulings on the general issues arising from that strike, we now discuss solely the main individual arguments of the present petitioners, against the background of the presiding official's initial decision which fully considered their contentions.

■ *Dysthe, Fullerton, Hall, Hay, Horton, Obert and Silseth:* These South Dakota controllers were demonstrating in front of their Sioux Falls facility on August 5, 1981, when their facility chief (Michael Baldridge) asked to speak to them, away from the press. At that meeting he gave each a direct order to return to work, either immediately or later that day, and each petitioner answered no to that direct order. Baldridge testified that he then indicated that removal action against them would shortly be initiated. These petitioners claim that he told them that they were then fired at that moment, and for that reason they did not return to work thereafter. The MSPB presiding official held that, even on petitioners' assumption as to what Baldridge said, they were not harmed by Baldridge's incorrect statement because they gave little or no credence to what they considered Baldridge to have said. They did not return to work even though he had ordered them to do so and they had received telegrams directing them to report. They did not seek clarification, despite the conflict in directions they thought they had received. They were also not deterred from responding to the removal notice they shortly received or from pursuing their rights before the MSPB. The gist of the presiding official's determination was that these petitioners did not really believe they had been properly fired by Baldridge, then and there, and they did not act as reasonable employees to clarify the situation.

This conclusion cannot be faulted. As this court has held in *Adams v. Department of Transportation, FAA,* 735 F.2d 488, 491 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 385 (1984), and as we hold today in *Stumpf v. Department of Transportation, FAA,* 794 F.2d 673 (Fed.Cir.1986), employees who are subjected to what they consider confusing instructions would normally seek to clarify their status and to clear up the assumed ambiguity—and would not be automatically relieved from their existing obligations as employees. *See also Anderson v. Department of Transportation, FAA,* 735 F.2d 537, 539–40 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 385 (1984).

■ *Petry:* This petitioner, stationed at Grand Forks, North Dakota, was on scheduled annual leave from August 3 until August 11, 1981; she went to Colorado and Nevada on vacation. Her supervisor called her on August 3rd and told her that her leave was cancelled because of the strike and she should return to work by August 7th; she responded that she did not think she would be back by August 7th and in fact did not so report. On August 8th she was still in Reno, Nevada. Her claim is that she attempted to return to her facility but could not obtain air transportation and could not afford train fare.

Both petitioner and her supervisor testified at the MSPB hearing and the presiding official found that (a) when she first told her supervisor that she did not think she was coming back by August 7th she had not yet ascertained the availability of return transportation and did not, at that time, indicate that her reason for not returning was unavailability of transportation; (b) she made only minimal efforts to seek return air transportation (contacting only one carrier), never went to the airport, and never contacted any other carrier; (c) she never sought other modes of travel such as bus or a rental car; (d) she did not try to use her return flight ticket to help finance a return train trip on Amtrak; (e) she never contacted her supervisor to tell him of her transportation problems; and (f) she did not raise the problem of transportation until the MSPB hearing.

On these and other facts the presiding officials could, and did, properly hold that

she had not made a *bona fide* effort to return to her duty station. That factual determination, based on substantial evidence and in large part on resolutions of credibility, cannot now be rejected by us. It follows that Petry was correctly removed for participating in the strike and for being absent without leave.

■ *Schoenfelder:* This petitioner had a regularly scheduled day off on August 3, 1981. Though a facility memo (of July 31, 1981) specifically notified all personnel at his facility with regular days off on August 3 or 4 to call the facility prior to 10 a.m. each morning, petitioner did not call or report on that day, and did not report for his regularly scheduled shift on August 4th or call at that time. His supervisor called petitioner's home at noon on August 5th, triggering no answer. The supervisor then called petitioner's fiancee's house and spoke to the house-occupant (apparently the fiancee's father). The supervisor asked the latter (who said Schoenfelder was then at the Union Hall) to tell Schoenfelder to call the supervisor immediately, and to relay the message that petitioner's deadline was 2 p.m. that very day. The occupant said he would forward the message at once. Schoenfelder did not call or report for work at the scheduled time, but did call at 5:25 p.m. that day, asking if he could return to work. This request was refused, petitioner was then removed, and the MSPB upheld that sanction.

Petitioner has given no reason whatever why he failed to report at the beginning of his deadline shift (as mandated) but called 3½ hours later to inquire whether he could then return. This was definitely not in compliance with the terms of the President's "amnesty" offer, and both the agency and the Board could permissibly hold that Schoenfelder was therefore not entitled to take advantage of that general offer.

■ Petitioner invokes the full Board's decision in *McClain/Putoff v. Department of Transportation*, MSPB Docket No. CH075281F2683 (decided April 15, 1983), as support for reversal of Schoenfelder's removal.[1] In *Putoff* the Board denied review of a presiding official's decision reversing Ms. Putoff's removal; she had called her facility late, some 5½ hours into her deadline shift. That full Board decision is irrelevant here. First, it was not a decision on the merits by the full Board but a denial of review of a presiding official's decision. Second, the facts were drastically different from those of the present case. The presiding official's initial decision in Putoff's case pointed out that (a) Ms. Putoff was originally opposed to the strike and did not want to go on strike; (b) she was very emotionally overwrought at the beginning of her deadline shift and felt she could not properly monitor planes; (c) these facts were definitely corroborated by other facility employees; (d) Ms. Putoff requested advice from her immediate supervisor and another controller who told her to call her upper-level superior (at home) which she did, telling him her situation and requesting sick leave, which was denied;[2] and (e) that higher-level superior testified before the MSPB that he viewed Ms. Putoff as being late for her deadline shift but as not on strike. In the current case there are no similar or comparable facts.

The result is that the MSPB decisions are upheld as to all of these petitioners.

AFFIRMED.

---

1.  Of course, a Board decision is not precedent in this court, but we consider it because petitioner argues disparate treatment.

2.  When Ms. Putoff asked that superior what she should do about the back-to-work order she had heard she was going to receive, he told her she would have to violate it.