Terry L. ANDERSON, et al., Leigh Anderson, et al., Allan A. Broholm, et al., and Rudolf C. Radnoff, Petitioners,

v.

DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, Respondent.

Appeal Nos. 85–1146, 85–1824, 85–2814, 85–2821.

United States Court of Appeals, Federal Circuit.

Sept. 3, 1987.

Richard J. Leighton, Buchanan Ingersoll, Professional Corporation, Washington, D.C., argued for petitioner Leigh Anderson, et al. With him on the brief were Glenn P. Sugameli, Risa D. Sandler and Margaret S. Dailey.

Gary Klein, Hannon & Trepel, Silver Spring, Md., argued for the petitioners in appeal numbers 85–1146, 85–2814 and 85–2821. With him on the brief was Phillip Wood, Pasky & Wood, Aurora, Illinois.

Stephen J. McHale, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner.

Before BALDWIN, Senior Circuit Judge,* NIES and ARCHER, Circuit Judges.

PER CURIAM.

Petitioners appeal from the decisions of the Merit Systems Protection Board (MSPB or board) sustaining their removals by the Federal Aviation Administration (FAA) from positions as air traffic controllers. We affirm.

*Background*

A. Proceedings before the MSPB.

The petitioners were removed as air traffic controllers with the FAA for participating in a strike against the United States,[1] in violation of 5 U.S.C. § 7311 (1982) and 18 U.S.C. § 1918 (1982), and for unauthorized absence (AWOL). All petitioners, except three, were controllers at the Chicago Air Route Traffic Control Center (ZAU).[2]

Petitioners' appeals to the MSPB were heard as part of a large consolidated pro-

---

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

1. For background regarding the nationwide strike of air traffic controllers in 1981, see *Schapansky v. Department of Transp., FAA*, 735 F.2d 477 (Fed.Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).

2. Petitioners Gorgol and Smith were controllers at Green Bay, Wisconsin, and petitioner Strong was a controller at Springfield, Illinois. *See* No. 85–1146. Gorgol and Smith appeal only on the

ceeding.[3] The presiding official issued an initial decision on January 18, 1983 sustaining petitioners' removals. The presiding official's decision became the final decision of the MSPB for the two groups of petitioners which elected to appeal from that decision to this court in the cases of *Terry L. Anderson, et al.* (No. 85–1146) and *Leigh Anderson, et al.* (No. 85–1824). *See* 5 C.F.R. § 1201.113 (1986). A third group of petitioners in the consolidated proceeding filed a petition for review with the full board under the caption, *Behensky, et al. v. Department of Transp., FAA,* 19 M.S.P.R. 341 (MSPB 1984). The board granted the *Behensky* petition and vacated the initial decision on February 8, 1984. The case was remanded to the presiding official for further findings on the "creation, reliability and trustworthiness of certain records" relied on by the FAA to establish a prima facie case of striking against the *Behensky* petitioners. The presiding official on remand, and, in turn, the board, rendered decisions (MSPB No. CH075281FO979REM) on December 17, 1984 and July 5, 1985, respectively, adverse to the petitioners.

Petitioners in *Allan A. Broholm, et al.* (No. 85–2814), members of the *Behensky* consolidation, thereafter appealed to this court, and petitioner *Rudolf C. Radnoff* (No. 85–2821), also a member of the *Behensky* consolidation, filed a separate appeal to this court. The four cases were heard together but not consolidated.

**B. Facts.**

In the proceedings before the MSPB, the petitioners contended that the FAA records lacked reliability and probative value, resulting in a failure of the FAA to establish a prima facie case of striking and AWOL against the ZAU petitioners. For understanding, we set forth the facts and factual controversy regarding these records in some detail.

1. The Initial MSPB Hearing.

At the initial hearing, the FAA proffered the documentary evidence contained in each petitioner's adverse action file to establish that each had unauthorized absences during the strike, including an unauthorized absence on the deadline shift. Petitioners stipulated to the contents but not the accuracy of these files. These adverse action files were admitted into evidence by the presiding official.

The parties entered into a stipulation as to the testimony that would be uniformly given with respect to each petitioner and his adverse action file by the facility chief at certain locations, including the ZAU facility chief, Mr. Gunter, as follows:

1. The time and attendance records truly and accurately reflect the regularly-scheduled shifts as posted on the watch schedule and any directed shift as assigned to the appellants by a supervisor and reflected in the adverse action file.

2. The appellants did not report for their first regularly-scheduled or directed shift as assigned after 11 a.m. EDT on August 5, 1981, nor any shift prior to that beginning with the 7:00 a.m. shift on August 3, 1981, (that) they were required to report for.

3. The appellants did not, in his opinion, provide any substantive information for their failure to report for the above-referenced shifts.

4. Mr. (facility chief) reviewed and considered all written responses received from appellants prior to making his decision to remove appellants.

5. Mr. (facility chief) reviewed and considered all summaries and recommendations concerning the oral reply prior to making his decision.

6. All notices of intended removal were mailed regular and certified mail.

7. Mr. (facility chief) is not aware of any appellants having contacted the facil-

---

issue that they were not given a proper oral reply. It does not appear that any issue has been argued on behalf of Strong.

**3.** This proceeding involving some 450 petitioners was captioned *Former Air Traffic Controllers v. Department of Transp., FAA,* MSPB No. CH075281F0834.

ity prior to their deadline shift to indicate that they were ready to work or were confused as to when to report to work.

8. In deciding that an appellant participated in a strike and was AWOL, Mr. ___ (facility chief) considered that a nationwide strike was in progress, that the appellants were scheduled to report for work, that they failed to report to work on or at any time prior to their deadline shift and that he believed the appellants offered no substantive information for his/her absence.

Copies of the pertinent parts of three types of documents were contained in each petitioner's adverse action file and were of central importance to the FAA's proof of strike participation and AWOL, namely, (1) watch schedules; (2) personnel sign-in logs; and (3) time and attendance records (T & A records). The watch schedules were normally prepared and posted by the FAA three to four weeks in advance and showed for each employee his shift assignments for one-week periods. Personnel sign-in logs were prepared by a supervisor of a particular shift, usually one day in advance, by inserting on the form the names, taken from the watch schedule, of the employees assigned to that shift. Included on the sign-in log form were columns for the employee to sign or initial opposite his or her name and to record his or her time on and off, and a column headed "hours on leave." In the latter, a notation may indicate hours of sick, annual or other approved leave. Finally, the T & A records represent a cumulation of each employee's attendance, pay and leave status and were derived in part from the watch schedules and personnel sign-in logs.

At the initial hearing, petitioners introduced, as their Exhibit 16, a complete set of what purported to be the original ZAU personnel sign-in logs for the first week of the strike (August 3 through 8, 1981), which had been produced by the FAA in response to petitioners' request. This set of sign-in logs was shown by petitioners to

be inconsistent in some 100 instances with the sign-in logs contained in the petitioners' adverse action files. Petitioners asserted that those discrepancies were the result of "doctoring" by the FAA to support the removal actions it had taken and, as a consequence, requested that all of the ZAU cases be reversed.

Although not specifically discussed by the presiding official, petitioners' counsel submitted to the presiding official at the close of argument a color-coded list of the alleged inconsistencies between the adverse action file copies of the sign-in logs and Exhibit 16, which petitioners' counsel explained as follows:

> The blue notations denote those individuals who had AWOL added to their orders [sic, logs] that did not appear on the sign-in logs for certain dates. The red denotes those individuals who had annual leave on the original sign-in log ... and cancelled on their sign-in logs that was [sic] contained in the adverse action file, and the persons [sic] in green had his name added to a sign-in log where his name did not actually appear on that sign-in log on the original.

Thus, according to the petitioners, the discrepancies in the sign-in logs consisted of three types of changes, (a) the notation "AWOL" was inserted in the blank space in the last column, (b) the "AWOL" notation was substituted for an annual leave or sick leave notation, and (c) a controller's name was added to the logs.

The presiding official in the initial decision found the documentary discrepancies of some significance because the facility chief, Mr. Gunter, had testified he relied on the sign-in logs, rather than personal knowledge, to determine whether a particular petitioner appeared for duty for scheduled shifts during the strike. Further, according to the presiding official, Mr. Gunter was unable to explain the discrepancies other than to make a vague statement that the file copy logs were "updated."[4] However, in the absence of any evidence show-

---

**4.** The FAA sought to have another FAA official,  Mr. Miller, testify concerning the apparent

ing that the logs were "doctored" for a specific purpose, the presiding official rejected petitioners' argument that the logs were altered by the agency in an improper attempt to influence the outcome of the proceedings and found that the logs could not be totally disregarded as probative evidence. The presiding official noted that his "failure to exclude the agency-submitted sign-in logs did not prejudice the ZAU appellants in the presentation of their cases since these appellants could have (and many, in fact, did) dispute [sic] the fact of their alleged absences from their regularly-scheduled tours of duty or otherwise explained the reason(s) for their absences in their hearing before the Board." The presiding official then concluded that, because the adverse action file copies of the logs could not be summarily disregarded, Mr. Gunter's live and stipulated testimony concerning the non-appearance of the ZAU petitioners at their deadline shifts established a prima facie case of strike participation as to all of the petitioners involved in that proceeding. Each individual's rebuttal and affirmative defenses raised at the initial hearing were then considered by the presiding official.

## 2. The Board Decision.

As previously noted, a group of petitioners (including those here in the *Broholm* and *Radnoff* appeals) appealed the initial decision to the full board. The board remanded the case to the presiding official because petitioners "have demonstrated that the agency did not in every case create the records in question in the usual course of business, but under unusual circumstances and with some inaccuracy." In doing so, the board held that the presiding official did not err in admitting the FAA's attendance and pay records into evidence, stating:

changes in the logs. All FAA witnesses were ordered sequestered during the hearing, and petitioners' counsel objected to Mr. Miller's testimony because he had acted as technical advisor to the FAA counsel during the hearing and had not been sequestered. The presiding official sustained this objection as well as petition-

Despite the fact that the records are in some instances incomplete, inconsistent, and contain alterations and succeeding entries, the [FAA] established through the testimony of facility chief Gunter that they were regularly created in conjunction with the operation of ZAU and they were relied upon in managing its work force.

The question, according to the board, was what probative value to ascribe to the admitted documents. This, it said, depended on their reliability which could be found by examining the circumstances of the documents' creation to see if there was an inherent probability of trustworthiness. In remanding, the board noted that in *Borninkhof v. Department of Justice*, 5 M.S.P.B. 150, 156–57 (1981), it had listed eight factors to be considered in assessing the reliability of written hearsay. Finally, the board stated:

A majority of the ZAU appeals, however, may contain records consistent enough to conclude that more likely than not an individual was striking and AWOL on at least one of the days charged. *See Schapansky, supra.* Consequently, this case is remanded to the presiding official for further adjudication consistent with this Opinion and Order. On remand, the presiding official may wish to consider the need for eyewitness testimony explaining the process by which the records were created. If the written record is to speak for itself we must be sure that it is accurate.

## 3. Remand Hearing and Decisions.

At the remand hearing, the FAA presented the testimony of the Facility Evaluations Officer at ZAU, Mr. Miller,[5] together with the testimony of several area supervisors regarding the preparation and use of

ers' objection to the FAA's motion to permit the record to remain open for further testimony concerning the changes in the documents.

**5.** *See supra* note 4.

the pertinent documents—watch schedules, sign-in logs and T & A reports. Mr. Miller was in charge of the so-called "war room," which was set up during the second week of the strike to deal with administrative paperwork associated with removal actions, oral replies, and the initial hearing. Also testifying were individuals who had been involved in "war room" activities and Mr. Shewfelt, Manager of the Labor Relations Branch for the FAA's Great Lakes Region, who had certified the adverse action files to the MSPB.

Petitioners' counsel cross-examined the FAA's witnesses and introduced certain documents seeking to discredit the FAA's records and its witnesses. In the course of the cross-examination of Mr. Miller, the FAA attorney, in order to avoid prolonging the questioning related to the FAA documents, introduced of record the following stipulation:

> Paragraph 1. In certain instances the FAA made amendments to 304's (sign-in logs) in Agency's Exhibit 1 for certain controllers after their oral reply.
>
> Paragraph 2. Among these amendments to the 304's was the addition of some printed names of controllers in this proceeding to their 304's, which the agency asserts was done to make the 304 consistent with the watch schedule.
>
> Paragraph 3. These changes could have occurred as late as November, 1981.
>
> Paragraph 4. These amended 304's were then copied and substituted for those in the files, which (files) eventually were transmitted to the Board as the appellants' adverse action files.
>
> Paragraph 5. The agency does not stipulate that these amendments were material or relevant to the controllers' removals.

In his remand decision of December 17, 1984, the presiding official, although noting that there were numerous differences between the original watch schedules and the copies of the watch schedules contained in the adverse action files, found that "no changes were made to any appellant's scheduled shifts during the applicable period." Based on the testimony of Mr. Miller and other supervisors as to the procedures for posting and amending watch schedules and the consistency of the documents as they pertained to petitioners, the presiding official found that the watch schedules were reliable and, in the absence of any specific challenge, accurately reflected the petitioners' shift assignments during the period in question.

As to the sign-in logs, the presiding official again noted that there were differences pointed out during the hearing but found that changes existed with respect to the logs of only three individuals involved in the remand proceeding.[6] The presiding official also stated that the area supervisors verified the authenticity of the applicable logs for the vast majority of the petitioners in the remand proceeding. Based on that testimony and his personal examination of all of the logs for the applicable period, the presiding official found an "inherent probability of trustworthiness."

With respect to the T & A records, the presiding official said the record reflects that amended reports were prepared during and for months after the strike, that the vast majority of the amendments dealt with pay periods subsequent to the employee's deadline shift and were therefore irrelevant, and that, in light of the findings regarding the watch schedules and sign-in logs, the T & As appropriately reflected each petitioner's status during the applicable period.

Finally, the presiding official made the following findings in reaching the conclusion that petitioners were absent without authorization during the strike and that each failed to report for his or her deadline shift:

---

6. These individuals, Nelson, Lockhart and Schultz, were found by the presiding official not to be prejudiced by the addition of their names to the sign-in logs because there was testimony that the omissions were inadvertent, such an inadvertent error was not an uncommon occurrence, and none of the three individuals alleged that he appeared on the dates in question.

I am not persuaded by appellants' arguments concerning the credibility of Messrs. Miller and Shewfelt, and the alleged forgery, fraud and misrepresentations on the part of the agency. I find no persuasive evidence that any agency official perjured himself, attempted to "make" or "rig" a case against an appellant, or otherwise committed any act which might be considered fraudulent. In some measure, the agency's records were not created in the ordinary course of business. However, during the summer and fall of 1981, agency "business" was far from "ordinary". Given the totality of circumstances, and in light of my findings above, I find that the agency's documentary evidence is, in fact, reliable.

Finding that the FAA had established a prima facie case and that none of the petitioners presented persuasive evidence in rebuttal, the presiding official upheld the charges of strike participation and AWOL as to all of the petitioners in the remand proceeding and sustained their removals.

In denying petitions for review of the remand decision on July 5, 1985, the board determined that the presiding official did not err or abuse his discretion in permitting Mr. Miller to testify at the remand hearing, even though he had not been sequestered or allowed to testify at the initial hearing. The board responded to the petitioners' contention that the agency had destroyed certain original records by stating that

the presiding official evaluated documents, weighed their probative value, and determined that any subsequent changes on the watch schedules contained in the adverse action files were made while working controllers were handling the increased workload occasioned by the strike. The presiding official found the documents reliable and an accurate reflection of appellants' shift assignments during the period in issue. *Borninkhof v. Department of Justice,* 5 M.S.P.B. 150 (1981). In any event, a close examination of these documents reveals that no changes were made to any appellant's scheduled shifts during the applicable period of August 3, 1981 through August 5, 1981. The Board finds no error in the presiding official's evaluation of the reliability of these documents. [Footnote omitted.]

## OPINION

### I.

This court's standard for reviewing decisions of the MSPB is defined and limited by statute. The decisions appealed herein must be affirmed unless they are

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). In *Brewer v. United States Postal Serv.,* 647 F.2d 1093, 1096, 227 Ct.Cl. 276 (1981), our predecessor court said that "[i]n determining whether the Board's decision is supported by substantial evidence, the standard is not what the court would believe on a *de novo* appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole."

The FAA had the burden of proving strike participation and AWOL by petitioners by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B). A preponderance of the evidence is defined by the MSPB regulations as:

[T]hat degree of relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

5 C.F.R. § 1201.56(c)(2).

The charge of striking is proven when it is shown that the employee withheld his

services in concert with others. *Schapansky*, 735 F.2d at 482. In *Schapansky*, this court held that "[p]roof of a wide-spread strike of general knowledge, together with proof of ... absence without authorization or explanation during the strike," constitutes a prima facie case of strike participation. *Id.* at 482. An unrebutted prima facie case, moreover, amounts to proof by a preponderance of the evidence. *See Hale v. Department of Transp., FAA*, 772 F.2d 882, 886 (Fed.Cir.1985). The charges of absence without leave are supported by the same evidence found to support the charges of striking. *See Schapansky*, 735 F.2d at 484.

In these appeals it is undisputed, and the presiding official found, that adequate proof of a strike of general knowledge was presented. The petitioners contend, however, that the second part of the *Schapansky* test—absence without authorization or explanation—was not proven. They point to the fact that the documents relied on by the FAA to show the absence of petitioners were altered or added to after their creation. Arguing that these alterations were not adequately explained by the FAA's witnesses, petitioners assert that the documents are untrustworthy hearsay and inadequate to establish a prima facie case of absence without authorization.

It has long been settled that hearsay evidence may be used in administrative proceedings and may be treated as substantial evidence even without corroboration if, to a reasonable mind, the circumstances are such as to lend it credence. *Hayes v. Department of the Navy*, 727 F.2d 1535, 1538 (Fed.Cir.1984) (and cases cited therein). In this regard, the very purpose of the remand by the board, and the remand hearing before the presiding official, was to assure the board that the FAA's documentary evidence was reliable and trustworthy with respect to individual petitioners.

## II.

Because of the different procedural histories between the *Broholm* (No. 85-2814) and *Radnoff* (No. 85-2821) appeals and the two *Anderson* appeals (Nos. 85-1146 and 85-1824), we are faced with different records in the two groups of cases. We therefore will discuss each group separately, first considering the *Broholm* and *Radnoff* appeals.

The petitioners' attack on the documents and the underlying record-generating process is based on general allegations of evidence tampering and false testimony by FAA officials. There is no question that changes and additions were made to some of the FAA documents. This was brought out by the petitioners during questioning of the FAA witnesses and by pointing to the documentary inconsistencies. In addition, a stipulated admission to that effect was made by the FAA's counsel. Nevertheless, petitioners' generalized charges of tampering and false testimony are totally inadequate to counteract the specific findings made by the presiding official on remand and approved by the full board.

The presiding official on remand concluded again that there was no evidence of fraud, forgery, or misrepresentation on the part of the agency, nor any persuasive evidence that any agency official perjured himself, attempted to make or rig a case against any appellant, or otherwise committed any act which might be considered fraudulent. In an attempt to attack these findings, the petitioners have detailed a number of instances in which they contend the testimony of agency witnesses is inconsistent or conflicting. However, the presiding official credited the testimony of Messrs. Miller and Shewfelt, was unpersuaded by the arguments of agency forgery and fraud, and relied on the testimony of the area supervisors as verifying the authenticity of the logs. That some parts of a witness' testimony may be attacked is a common phenomenon, but it supplies no basis for holding that the fact-finder is not entitled to credit other parts of that witness' testimony. *DeSarno v. Department of Commerce*, 761 F.2d 657, 661 (Fed.Cir. 1985). We have examined carefully the

discrepancies noted by petitioners and are unable to conclude that we should second guess the credibility determinations of the presiding official, based as they are on the demeanor of the witnesses during direct and cross-examination. *See Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985). *See also Hambsch v. Department of the Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986) (credibility determinations are "virtually unreviewable").

The testimony of the FAA officials, being credible, provides substantial evidence to support the board's findings that there was no attempt on the part of the FAA to make or rig a case against any petitioner or otherwise commit a fraudulent act. Thus, the FAA's documentary evidence cannot be summarily rejected as unreliable and non-probative, as petitioners contend, based on general allegations of tampering.

Because of their reliance on a broadside attack against the FAA's case, petitioners have also failed to address or counter in any way the crucial findings of the presiding official on the accuracy and the reliability of the documents as they relate to the individual petitioners involved in the remand proceeding. The presiding official found that no changes were made to any petitioner's scheduled shifts and that the watch schedules were reliable and accurately reflected the petitioners' shift assignments. These findings were made by the presiding official after hearing the testimony of the FAA officials, including their cross-examination, and after reviewing the documents for consistency.

Petitioners' response to these findings is that the watch schedules had alterations and that the FAA was unable to produce ancillary documents, such as the "swap book" in which controllers' agreements to swap shifts are usually recorded, because they were no longer available at the time of the hearing. As a result, the accuracy of all the shift assignments could not be verified. Petitioners, however, made no specific allegations of changes in shift assignments for any of the petitioners in the remand proceeding and the presiding official's finding that there were no such changes remains unchallenged. If there were in fact errors in the shift assignments as to those petitioners, they could have identified them to the FAA or in the MSPB proceedings. In the absence of any showing of a specific mistake for any individual petitioner, the presiding official's finding of accuracy in the watch schedule shift assignments must stand.

The second important finding relates to the sign-in logs where, despite the many differences claimed by petitioners to exist between the original logs and the copies contained in the adverse action files, the presiding official determined that a change was made only for three of the petitioners in the remand proceedings. In the three cases, the difference was that the employee's name had been added to a sign-in log because it had been inadvertently omitted for a shift to which the employee was assigned per the watch schedule. The presiding official determined that these individuals had not been prejudiced by the addition of their names to the logs. Significantly, no allegation of prejudice has been made on appeal on behalf of these individuals, nor is there any indication that they were either not assigned to the particular shifts or were in fact present at such shifts.

Again, there is no specific challenge on behalf of any individual petitioner in this appeal to the presiding official's determination. The petitioners were content to rely solely upon their general allegations that the discrepancies in the logs, even though the discrepancies did not implicate petitioners in this appeal other than the three whose names were added to the logs, made the logs, *in toto* untrustworthy hearsay. After noting that the witnesses testified that no signatures were erased from any sign-in logs, that none of the petitioners had alleged that he or she did in fact appear on the dates in question, and that area supervisors verified the authenticity of the applicable logs for the vast majority of the petitioners, the presiding official found, af-

ter examining all of the logs for the applicable period, an "inherent probability of trustworthiness." Accordingly, it must be concluded that to the extent there were changes in, or additions to, the logs, the petitioners were unaffected by the changes, and that for purposes of these appeals the logs are probative evidence of the petitioners' absences for their assigned shifts.

The petitioners in the *Broholm* appeal have also set out specific arguments for claiming that the documentary evidence was insufficient to establish a prima facie case of absence without authorization. We find all of them without merit and substantially covered above except as discussed below.

Petitioners contend that the documentary evidence submitted to the MSPB was not the same as that relied upon by the FAA as the basis for removing petitioners. However, the two critical features of the documents—petitioners' shift assignments and absence of petitioners' signatures—were found by the presiding official to be unchanged, except for the three names added to the logs to correct inadvertent errors. We must conclude that there is not a sound basis for petitioners' assertion. Further, petitioners have not shown that the irregularities in the documents otherwise complained of have resulted in harmful error. *See Adams v. Department of Transp., FAA*, 735 F.2d 488, 490 n. 3 (Fed.Cir.1984) and concurring opinion of Judge Nies, 735 F.2d at 495.

Petitioners also argue that, although hearsay is admissible in MSPB proceedings, the documents here lack an identifiable declarant and "do not even qualify as hearsay." Petitioners' assertion that the documents are akin to "mere rumor" is contrary to the specific findings of the MSPB and the testimony clearly indicating that they were created in conjunction with the operations of the Chicago facility and relied on in managing that work force. In this regard, the presiding official stated that while in some measure the agency

records were not created in the ordinary course of business during the summer and fall of 1981, the agency "business" was far from "ordinary." We cannot say that the presiding official erred in concluding that, given the totality of the circumstances, the agency's documentary evidence was, in fact, reliable.

Petitioners assert that the AWOL entries, which were, for the most part, entered on the sign-in logs at a later date, were relied on by the FAA as its evidence of absence without authorization. There is no indication, however, that weight was given to the AWOL notation. Moreover, the presiding official in the remand opinion concluded, albeit in the context of the three added names to the logs, that the significant or probative feature of the logs was the presence or absence of the employee's signature. Since no petitioner has contended that he was not absent or was not scheduled for duty for any of the shifts at issue in this appeal, no prejudicial effect on any petitioner has been shown by the AWOL notation even if entered for any petitioner in these appeals. As already noted, the presiding official found no changes in the logs relating to the petitioners here, except for the three whose names were added to the logs.

The board's conclusion and determination that the FAA established a prima facie case of strike participation with respect to each petitioner is also supported by the adverse inference that may be drawn from the failure of any of the petitioners to come forward, either at the board hearings or at the agency hearing, to affirm that they were not absent or that their scheduled shifts were incorrectly recorded by the agency. As stated in *Adams*, 735 F.2d at 492,

> [p]etitioners declined twice, however, to explain their absences, once during the agency removal proceedings and again during the Board hearing. The first failure to deny the charges left those absences unauthorized and unexplained, thereby adding to the sufficiency of the

agency's *prima facie* case. It is the Board's decision we review, and the petitioners' silence before the Board, after the agency had established a *prima facie* case, fully warranted the Board's drawing of an adverse inference. "Silence is often evidence of the most persuasive character."

These are appeals of cases where, as in *Hale*, 772 F.2d at 885–86, "[p]etitioners deliberately chose to present no rebuttal evidence, apparently concluding that a prima facie case had not been established and that they could prevail by that stratagem.... An unrebutted prima facie case is necessarily, by definition, a 'preponderance' of the evidence. *See Schapansky*, supra, 735 F.2d at 483."

### III.

The remaining issues in *Broholm* (No. 85–2814) and *Radnoff* (No. 85–2821) may be disposed of without extended discussion.

(1) Petitioners contend that the presiding official erred in not imposing sanctions, pursuant to 5 C.F.R. § 1201.43, on the respondent. Since we have concluded that the presiding official correctly determined that the FAA established a prima facie case of striking and AWOL, in part, upon the basis that the agency records were reliable and that no act was committed by an agency official which might be considered fraudulent, we affirm that the board acted properly in denying sanctions.

(2) In *Broholm*, petitioners have raised procedural issues regarding the pretermination hearings, citing the Supreme Court's decision in *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). These contentions have been effectively disposed of by this court's decisions in *DeSarno*, 761 F.2d at 660 (*Loudermill* does not enlarge upon the procedural rights due federal employees under the Civil Service Reform Act) and *Handy v. United States Postal Serv.*, 754 F.2d 335, 337 (Fed.Cir.1985) (it is petition-

ers' burden to prove harmful procedural error in the oral reply process). Petitioners have failed to show that absence of the alleged procedural error might have produced a different result. *See Shaw v. United States Postal Serv.*, 697 F.2d 1078, 1080–81 (Fed.Cir.1983); *Adams*, 735 F.2d at 490 n. 3, 495.

(3) The issue raised in the *Radnoff* appeal that petitioner was denied Presidential amnesty by being charged with strike participation prior to his deadline shift has been fully considered and decided in *Anderson v. Department of Transp., FAA*, 735 F.2d 537, 540 (Fed.Cir.1984); *Dorrance v. Department of Transp., FAA*, 735 F.2d 516, 520 (Fed.Cir.1984); *Adams*, 735 F.2d at 490–91.

### IV.

With respect to the two *Anderson* appeals (Nos. 85–1146 and 85–1824), these petitioners did not seek full board review of the initial presiding official's decision, and it is that decision which is challenged here. These petitioners seek reversal on the ground that the presiding official erred in holding that the documentary evidence on which Facility Chief Gunter based his removal decisions was probative. Further, they maintain that a remand (as ordered by the board in *Behensky*) is inappropriate for the reason that the agency should not be given a second chance to prove its case. We need not address the latter issue since we conclude that the presiding official properly could credit Mr. Gunter's live and stipulated testimony, including his testimony based on the documents contained in each petitioner's adverse action file.

The presiding official ruled that Mr. Gunter's stipulated testimony[7] constituted unrebutted evidence that each petitioner failed to report for his/her first regularly-scheduled shift following 11:00 a.m. EDT on August 5, 1981, and, therefore, found that each had withheld his/her services from the agency during the strike. Mr.

---

7. The stipulated testimony appears at pp. 1565– 66, *supra*.

Gunter further testified that the records were regularly created in conjunction with the operation of ZAU, and they were relied upon in managing its work force.

Because Mr. Gunter relied on the sign-in logs, rather than personal knowledge, to determine whether an employee appeared for his or her scheduled shift during the strike, the presiding official expressly stated that he gave careful consideration to petitioners' contentions concerning the validity of these documents. Mr. Gunter was unable to explain the discrepancies between copies purportedly of the same sign-in log except to say that some were "updated." However, because there was no evidence showing that the logs were "doctored" or altered by the FAA in an improper attempt to influence the outcome of the hearing, as asserted by petitioners, the presiding official stated that he could not disregard them totally as probative evidence. On that basis he concluded that his determination that the FAA's prima facie case was established by Mr. Gunter's live and stipulated testimony should not be disturbed.

The issue before us is whether there is substantial evidence in the record to support the presiding official's determination that the agency made a prima facie case of strike participation for each petitioner. *See* 5 U.S.C. § 7703(c). Petitioners argue that the documentary evidence should be held inadmissible, which would leave the record devoid of evidence to support the charges. Even if admissible, petitioners assert that the evidence is insufficient to establish a prima facie case of strike participation and AWOL charges against any ZAU controller.

Throughout their briefs, petitioners argue that the government altered its records to "fabricate" evidence against petitioners and that its actions constitute a "fraud on the court." The presiding official found no evidence "that the agency 'doctored' these amended logs in order to support the removal actions it had taken." Petitioners, nevertheless, label the sign-in logs in all files as "false," "manufactured evidence,"

"secretly insert[ed] amendments," and the like, and at the same time urge that the presiding official's ruling on "motive" is immaterial. More specifically, the principal argument appears to be that a change from "approved leave" to "AWOL" on the sign-in logs could somehow be *evidence* of AWOL which influenced the presiding official's decision to uphold the charge.

Nothing in the presiding official's analysis lends support to that argument. The government argues that a notation of AWOL added to the sign-in logs reflects no more than the agency's view of the matter. We agree. The presiding official clearly recognized that being AWOL was an issue, and he ruled on each of the charges *de novo*, overturning a number of the agency's removal decisions. Indeed, with respect to the one example singled out by petitioners to illustrate their position that evidence was "manufactured," namely, the removal of L. Rodney Peterson, the presiding official set aside Peterson's removal despite the agency's records which indicated that he was AWOL. Accordingly, because there is no evidence of evidence tampering—not even a suggestion that a signature was expunged from a sign-in log to manufacture a case against someone—we affirm the presiding official's finding that the records were not "doctored" to manufacture evidence for the MSPB proceedings.

The petitioners argue that the large number of unexplained discrepancies and the absence of any original unaltered record render any sign-in log in a petitioner's file inadmissible. Alternatively, if technically admissible, the records are, per petitioners, too "unreliable" to constitute substantial evidence of the charges against them.

In support of their view that the documentary evidence is totally unreliable, petitioners rely on the decision of the full board in *Behensky*, previously discussed, from which they extract the board's statement that there were "numerous alterations and inconsistencies in the agency's documentation." *Behensky*, 19 M.S.P.B. at

343. In view thereof, petitioners assert that the records should have been excluded.

The *Behensky* decision does not support petitioners' argument here that the records were *improperly received* in evidence. On the contrary, in *Behensky*, the board specifically held:

> We conclude that the presiding official did not err in admitting the agency's attendance and pay records into evidence. Despite the fact that the records are *in some instances* incomplete, inconsistent, and contain alterations and succeeding entries, the agency established through the testimony of facility chief Gunter that they were regularly created in conjunction with the operation of ZAU and they were relied upon in managing its work force. [Emphasis added.]

*Id.* at 344.

From our review of the record, we also reach the conclusion that the records were properly admitted. The documents are of the type which have routinely been accepted and used to establish a prima facie case of strike participation. *See Dorrance v. Department of Transp., FAA*, 735 F.2d 516, 519 (Fed.Cir.1984); *Hale*, 772 F.2d at 886. While petitioners argue that in their appeals the records may not be treated as "business records" prepared in the ordinary course of business because of the subsequent changes, evidence need not, in MSPB proceedings, fall within an exception to the hearsay rule to be admissible. *See Dorrance*, 735 F.2d at 519; *Hayes*, 727 F.2d at 1538. Rather, the board and this court are concerned with the reliability of the hearsay to establish the charges against an employee.

The board noted in *Behensky* that the records were created with "some inaccuracy." *Behensky*, 19 M.S.P.B. at 345. The demonstrated inaccuracy, however, did not lead the board to conclude that the records were so wholly unreliable that they could not serve as evidence against anyone. Nor did the board hold that additional testimony was necessary to establish their reliability.

On the contrary, the board stated, "A majority of the ZAU appeals, however, may contain records consistent enough to conclude that more likely than not an individual was striking and AWOL on at least one of the days charged." *Id.* at 345.

That the board in *Behensky* chose to have the presiding official re-review the records for consistency as to individual petitioners and suggested that the presiding official on remand might take additional testimony was a matter within its discretion. The presiding official is part of the board, and the board is not required to review the presiding official's decision limited by a standard of review comparable to that imposed on this court. Our role is severely circumscribed in reviewing a presiding official's decision as compared to that of the board.

With regard to the specific inconsistencies raised by petitioners, the predicate for their argument of unreliability is the addition of names to the watch schedules and the sign-in logs, as well as the changes in annual leave designations to AWOL. These changes, per petitioners, totally destroy the probative value of the documents in every ZAU adverse action file on which Mr. Gunter based his removal decision. We disagree.

Petitioners improperly ask us to resolve the ZAU cases as a group rather than individually. While their challenges to the removal actions were consolidated for convenience of trial, each controller has a separate claim for wrongful removal. Not one of the petitioners in the instant cases has asserted that information contained in his or her adverse action file was wrong either with respect to a shift assignment or his or her absence from a scheduled shift. No petitioner here has asserted, for instance, that his or her name was improperly added to a sign-in log or that he or she did not receive notice of being scheduled for duty during the period in question. Similarly, no petitioner asserts that the sign-in logs did not accurately reflect his or her non-appearance during a scheduled shift, i.e., that

his or her signature was somehow expunged or that he or she inadvertently neglected to sign in.

Contrary to petitioners' argument, it was not necessary that the presiding official make a specific finding as to the accuracy and reliability of the documentary evidence as it related to each individual petitioner in the absence of some proof of error as to that individual. If the FAA had erroneously "updated" an individual petitioner's T & A record, that person had the burden of bringing such error to the attention of the FAA during its removal proceedings or at least to the attention of the presiding official at the board hearings.

Also contrary to petitioners' argument, the issue presented here was not decided differently by the board in *Gerbitz v. Department of Transp., FAA*, 17 M.S.P.R. 283 (MSPB 1983). According to petitioners the sole difference between *Gerbitz* and the cases presented for review here are the number of petitioners involved. That is unequivocally wrong.

In *Gerbitz*, the sole petitioner did not remain silent in the face of strike charges, as did petitioners here. The dispute in *Gerbitz* was over the amount of leave Gerbitz had been granted; seven days or seven hours, and whether his leave had been cancelled. Gerbitz testified at his board hearing that "he received approval of his request for seven days of annual leave on July 31, 1981 covering the period August 3rd through August 9th, 1981." *Id.*, at 284. While his supervisor, Salinas, testified he granted Gerbitz only seven *hours* of annual leave, a contemporaneous memo prepared by Salinas supported Gerbitz's claim. There was also conflicting testimony over whether Gerbitz's leave had been cancelled. In view of the entire record, the board held that the probative value of the records which showed Gerbitz scheduled but absent was greatly reduced. In reversing Gerbitz's removal, the board ruled:

> As we held in *Borninkhof v. Department of Justice*, 5 M.S.P.B. 150, 157 (1981), hearsay evidence, although suffi-

cient to meet a substantial evidence standard, may not be sufficiently probative *in light of contradictory live testimony* to sustain the agency burden of proof by a preponderance.

*Id.*, at 286 (emphasis added). Petitioners here can draw no support from the ruling in *Gerbitz*. No petitioner here contradicted the hearsay evidence with his or her own contradictory live testimony challenging his or her record. Further, as we noted in the *Broholm* and *Radnoff* appeals, an adverse inference may be drawn from petitioners' conscious decision to remain silent at both the agency and board level rather than to affirmatively assert the incorrectness of their scheduled shifts or their presence on duty. *See Adams*, 735 F.2d at 492.

Petitioners argue that requiring them to come forward with evidence of specific error improperly shifts the burden of proof with respect to hearsay evidence and that it was incumbent on the government to establish the "accuracy" of its records in order to establish a prima facie case against *any* petitioner. Again, we must disagree. If the government were required to prove the accuracy of every entry in order to use any part of the record as evidence, the hearsay evidence itself would be merely cumulative and unnecessary. In any event, the accuracy of an entry on the records for a particular individual, while critical to his case, is irrelevant or harmless error as to another if the records correctly show the latter's absence during a scheduled shift. Since the changes relate to individuals, not the group as a whole—indeed, no change at all appears in the records of the majority of controllers—a requirement that individuals put forth some proof of error in their individual records is reasonable under the circumstances. A requirement for coming forward with evidence does not shift the overall burden of proof. *See Schapansky*, 735 F.2d at 482.

From our review of the record, we conclude that the presiding official's finding that the agency established a prima facie case of strike participation against each of

the *Anderson* petitioners is supported by substantial evidence. Having been given ample opportunity before the presiding official to establish that the records indicating, prima facie, a petitioner's unauthorized absence during a strike was inaccurate, none offered a personal challenge. With no countering evidence, the agency's proof of a prima facie case of strike participation under *Schapansky* amounted to a preponderance of the evidence. *See Hale*, 772 F.2d at 886; *Schapansky*, 735 F.2d at 483.

### V.

In both *Anderson* appeals, procedural issues regarding pretermination hearings have been raised, as they were in *Broholm.* Our discussion and application of this court's decisions *supra* at 1573 is equally applicable here.

### CONCLUSION

The decisions of the board in Nos. 85–1146, 85–1824, 85–2814, and 85–2821 are affirmed.

AFFIRMED.

BALDWIN, Senior Circuit Judge, dissenting.

I must dissent from the majority's affirmance of the board's determination that the FAA has carried its burden of demonstrating a prima facie case of strike participation and AWOL by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B); 5 C.F.R. § 1201.56(a)(1)(ii). The issue is whether there is substantial evidence in the record to support the board's decision that the agency made a prima facie case of strike participation for each petitioner. 5 U.S.C. § 7703. To establish the charge of strike participation, the FAA came forward with proof of a strike of general knowledge coupled with documents purporting to establish absence without authorization by each of the petitioners.* Much of that documentation was incomplete, inconsistent, and/or altered after-the-fact. Those records having not been prepared in the ordinary cause of business, the board should have concluded that those records could not serve as evidence against anyone.

This unreliable documentation created a record that is so flawed, in the first instance, as to undermine its probative value, and prevent the establishment of a prima facie case. Such records are hearsay which could be acceptable in administrative hearings to provide a substantial evidence basis for agency charges if, to a reasonable mind, the circumstances are such to lend it credence. *Hayes v. Department of the Navy*, 727 F.2d 1535, 1538 (Fed.Cir.1984). The alterations and inconsistencies in the documents, however, are circumstances which destroy the acceptability of the entire record.

Although the majority recognizes discrepancies in the record, primary weight is accorded to the determination by the board that there was no attempt by the FAA to commit a fraudulent act, a forgery, a misrepresentation, or to commit perjury. I take no issue with the board's "virtually unreviewable" credibility determination regarding the lack of any improper intent on the part of the FAA. In focusing on the motives of the FAA, however, the board has missed the key issue of the reliability of the record upon which the FAA case is based.

Although deference is to be accorded to an administrative determination, we, the reviewing court, retain a responsibility to scrutinize the entire record and to reverse or remand a decision which is not supported by substantial evidence. The circumstances surrounding creation of the FAA's documentation has undermined the probative value of the evidence against pe-

* Charges of absence without leave are supported by the same evidence that would support charges of strike participation. *See Schapansky v. Department of Transp., FAA*, 735 F.2d 477, 484 (Fed.Cir.1984). Unrebutted evidence showing that an employee withheld his services in concert with others would amount to proof by a preponderance of the evidence. *Hale v. Department of Transp., FAA*, 772 F.2d 882, 885 (Fed. Cir.1985).

titioners. The FAA has failed to provide reliable documentation as a substantial evidence basis for a prima facie case of absence without authorization.

Because petitioner Boddie, an employee of respondent Navy Department at the Philadelphia Navy Yard, slapped a subordinate employee during a work-related altercation, the former was demoted from the supervisory position of General Foreman Pipefitter, WS–14, to the non-supervisory role of Production Shop Planner (Pipe Fitter), WG–6. The Merit Systems Protection Board (MSPB or Board), 31 M.S.P.R. 607 (1986), affirmed the charge and that sanction. We reverse for significant procedural error by the employing agency.